IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**JASON MATHEWS,**

        Plaintiff,

   v.

**CAROLYN W. COLVIN, acting Commissioner of the Social Security Administration**,

        Defendant.

No. 3:12-cv-02308-MO

OPINION AND ORDER

**MOSMAN, J.**,

    Plaintiff Jason Mathews filed a complaint [1] seeking review of the Commissioner's decision to deny his application for supplemental security income. Because I find that the ALJ committed no prejudicial error in disregarding a lay witness's testimony concerning Mr. Mathews's mental limitations, I affirm the ALJ's decision.

## BACKGROUND

    Mr. Mathews protectively filed an application for supplemental security income on October 30, 2009, alleging an onset date of October 17, 1985. (AR [10-6] at 153.) His application was denied initially and on reconsideration. (AR [10-5] at 61, 66.) A hearing was held before Administrative Law Judge ("ALJ") Steve Lynch on May 11, 2011. (AR [10-3] at 24.)

1 – OPINION AND ORDER

Robert Jones, Mr. Mathews's father, testified at the hearing that he helped Mr. Mathews get a job at Mr. Jones's place of employment. *Id.* at 36. From "about a month, month and a half" prior to the hearing, Mr. Mathews worked in salvage, searching through refuse at a dump for items with value. *Id.* Knowing that his son frequently complained of back pain, Mr. Jones told Mr. Mathews that he should not lift any object heavier than thirty pounds without help. *Id.* at 37. On the job, Mr. Jones observed that Mr. Mathews sometimes appeared not to understand what Mr. Jones said to him, and would forget to put objects away after using them. *Id.* at 38, 39. Mr. Jones described no other specific impairments, but testified generally that Mr. Mathews "hurts once in a while" and is "mentally slow." *Id.* at 37, 39–40. Because of these limitations, Mr. Jones said, "If I wasn't his dad, I probably would fire him." *Id.* at 38.

The ALJ decided that Mr. Mathews is not disabled on May 18, 2011. *Id.* at 18. According to the ALJ, Mr. Mathews retains the residual functional capacity ("RFC") to "perform light work" that is limited to "simple, entry level work that does not require execution of written instructions, require creation of written reports, or require performance of math calculations." *Id.* at 15. The ALJ did not discuss the specific limitations that Mr. Jones identified, but merely declared that he considered Mr. Jones's statements in the RFC determination. *Id.* at 17. Later in the opinion, the ALJ concluded generally that Mr. Mathews's "alleged limitations are not fully persuasive" to the extent that they contradict the RFC determination and the medical record. *Id.* When the Appeals Council denied Mr. Mathews's request for review, the ALJ's decision became the final decision of the Commissioner. *Id.* at 1.

Mr. Mathews filed a complaint [1] in this Court seeking review of the Commissioner's decision on December 20, 2012. He filed an opening brief [13] on September 9, 2013. The Commissioner responded [15], and Mr. Mathews replied [16].

**STANDARD OF REVIEW**

An ALJ's denial of benefits must stand unless it "was not supported by substantial evidence in the record as a whole" or "the ALJ applied the wrong legal standard." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (internal quotation omitted).

**DISCUSSION**

Mr. Mathews asserts only one error in this Court. He argues that the ALJ disregarded Mr. Jones's lay opinion without explaining his reasons for doing so.

**I.     Mr. Jones's Lay Witness Testimony**

Lay testimony concerning "how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account." *Molina*, 674 F.3d at 1114. When rejecting a lay witness's testimony, an ALJ must provide reasons that are "germane" to the witness. *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008) (internal quotation omitted). A lay witness's failure to provide factual support for his opinion that the claimant cannot work is a proper reason for affording this opinion little weight. *See Turner v. Comm'r*, 613 F.3d 1217, 1224 (9th Cir. 2010) (noting that a lay witness's observations that the claimant "had nightmares" and "did not like crowds" did not bear on the witness's opinion that the claimant could not work).

An ALJ need not "clearly link" his rejection of lay testimony to specific reasons, as long as he noted those reasons elsewhere in his decision and the reasons are "arguably germane." *See Lewis v. Apfel*, 236 F.3d 503, 511–12 (9th Cir. 2001). In *Lewis*, the ALJ rejected testimony by the claimant's family members as contrary to "documented medical history and findings and

3 – OPINION AND ORDER

prior record statements" without further explanation. *Id.* at 511. The Ninth Circuit held that this was not error, because the ALJ had explained the contradictory medical evidence and statements elsewhere in the decision. *Id.* at 512. Similarly, where the ALJ rejects one witness's testimony for proper reasons, "the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114 (9th Cir. 2012) (citing *Valentine v. Comm'r*, 574 F.3d 685, 694 (9th Cir. 2009)).

Mr. Mathews argues that the ALJ erred in failing to address Mr. Jones's testimony that Mr. Mathews was not able to understand his verbal instructions. (Pl.'s Br. [13] at 6.) This shortcoming was severe enough, Mr. Mathews asserts, that Mr. Mathews could not perform adequately "even with supported, near sheltered work." *Id.* Mr. Mathews contends that the ALJ's failure to address Mr. Mathews's limitation in comprehending spoken directions is a de facto rejection of that limitation without providing a reason. *Id.*

Mr. Mathews is correct. Where an ALJ's RFC determination cannot reasonably be reconciled with a lay witness's statements concerning the severity of the claimant's impairments, the ALJ necessarily has rejected those statements. Here, Mr. Jones testified that Mr. Mathews suffers from fairly severe cognitive impairments. Contrary to Mr. Mathews's opening brief, Mr. Jones never asserted specifically that Mr. Mathews could not understand instructions, but he did testify that "sometimes [Mr. Mathews] doesn't comprehend what [Mr. Jones] tell[s] him." (AR [10-3] at 38.) This impairment, bundled with Mr. Mathews's back problems and forgetfulness, appeared severe enough to drive Mr. Jones to suggest that he "probably would fire [Mr. Mathews]" if he were not his father. *Id.* This is not a case where a lay witness has idly rendered an opinion that a claimant is not capable of working without grounding that opinion in any relevant facts. Mr. Jones identified fairly specific impairments in his son, and opined that these

4 – OPINION AND ORDER

impairments so severely affected Mr. Mathews's ability to work as to make him unemployable without special solicitation.

The RFC, moreover, does not account for the mental limitations that Mr. Jones identified. The only intellectual accommodations that the RFC provides are to limit Mr. Mathews to jobs that require no written instructions, generation of written reports, or arithmetic. It does not account for Mr. Mathews's asserted difficulties with comprehending spoken words. The RFC therefore cannot reasonably be reconciled with Mr. Jones's testimony regarding Mr. Mathews's mental impairments, and must be understood as a rejection of that testimony. The ALJ's failure to state sufficient reasons for that rejection is error.

The Commissioner argues that, as in *Lewis*, the ALJ stated reasons for rejecting Mr. Jones's testimony elsewhere in his decision, and that his failure to "clearly link" those reasons to Mr. Jones was not error. (Def.'s Br. [15] at 6.) The ALJ noted in another portion of his decision that a psychologist's evaluation concluded that Mr. Mathews suffers no significant mental limitations beyond those noted in the RFC. (AR [10-3] at 16.) The Commissioner argues that this fact may be understood to underlie any rejection of Mr. Jones's testimony, even if the ALJ did not refer to it as a reason for doing so. (Def.'s Br. [15] at 6.)

The Commissioner reads *Lewis* too broadly. In *Lewis*, the ALJ identified inconsistencies with the medical record and other statements as a reason for rejecting lay testimony, after having already described those inconsistencies in detail in another context. Here, on the other hand, the ALJ did not apply previously discussed reasons to Mr. Jones by reference. Instead, he gave no reasons at all.

I find that the ALJ erred in failing to state sufficient reasons for rejecting Mr. Jones's lay testimony concerning Mr. Mathews's mental limitations.

5 – OPINION AND ORDER

## II.     Harmless Error

Generally, "an ALJ's error is harmless where it is inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115 (internal quotation omitted). "[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r*, 454 F.3d 1050, 1056 (2006) (finding an ALJ's unexplained rejection of lay witnesses' uncontradicted testimony not harmless). This harmless error standard is met if the ALJ credited in his decision "more reliable medical evidence" that contradicts the lay witness's statements. *Molina*, 674 F.3d at 1119.

The Commissioner argues that the ALJ credited objective medical evidence that contradicts Mr. Jones's lay opinion, and therefore that any error in failing to credit the entirety of that opinion is harmless. (Def.'s Br. [15] at 6–7.) James Powell, Psy.D., conducted a battery of tests on Mr. Mathews. (AR [10-3] at 16; [10-8] at 207–15.) He concluded that Mr. Mathews suffers significant limitations in reading, writing, and arithmetic, but not in other measures of cognitive skills. (AR [10-3] at 16; [10-8] at 212–13.) Based on objective test results, in Dr. Powell's opinion, Mr. Mathews suffers no significant limitation in understanding, remembering, and carrying out short and simple instructions. (AR [10-3] at 16; [10-8] at 216–17.) The ALJ gave great weight to Dr. Powell's opinion. (AR [10-3] at 16.) The Commissioner argues that Dr. Powell's conclusions contradict Mr. Jones's testimony, and accordingly that any error the ALJ committed in disregarding that testimony is harmless. (Def.'s Br. [15] at 7.)

Mr. Mathews argues in response that a reasonable ALJ who fully credited Mr. Jones's testimony might reject Dr. Powell's opinion and find Mr. Mathews disabled. (Reply [16] at 2.)

Unlike Dr. Powell, Mr. Mathews argues, Mr. Jones watched Mr. Mathews in a real-life workplace environment. *Id.* at 1. Because Mr. Mathews has shown himself unable to "follow instructions and perform work-related mental tasks" in a real-world setting, he argues that a reasonable ALJ might favor Mr. Jones's observations over Dr. Powell's findings. *Id.*

The Commissioner is correct. As in *Molina*, no reasonable ALJ would fail to conclude that Dr. Powell's objective test results, which the ALJ credited here, are "more reliable" than Mr. Jones's lay statements concerning Mr. Mathews's mental limitations. This is so for two reasons: first, Mr. Jones's description of his son's mental difficulties was vague and general, while Dr. Powell's test results were thorough and specific; second, Dr. Powell's findings squarely contradict Mr. Jones's statement that his son cannot understand spoken words.

Mr. Jones testified generally that Mr. Mathews "sometimes . . . doesn't comprehend what [Mr. Jones] tell[s] him." (AR [10-3] at 38.) Mr. Mathews's contention that he is unable to understand even simple spoken instructions specifically is merely an inference drawn from Mr. Jones's testimony, and not a necessary one. Mr. Mathews may struggle to understand only very complex instructions, or other spoken statements not properly considered "instructions" at all. By contrast, Dr. Powell stated expressly in his report that Mr. Mathews can understand, remember, and execute "very short and simple instructions." (AR [10-8] at 216–17.) He based this opinion on his administration of the Wechsler Adult Intelligence Scale—Third Edition ("WAIS-III"), which includes tests of vocabulary, social comprehension, solution of arithmetic word problems, general knowledge, and verbal concept formation. *Id.* at 211–12. While Mr. Jones's testimony does not necessarily imply that Mr. Mathews cannot understand simple instructions, Dr. Powell expressly declared based on his test results that Mr. Mathews suffers no significant limitations in doing so. Any reasonable ALJ would find Dr. Powell's specific opinion

based on scientific testing more reliable than Mr. Jones's vague, general description, however based on real-life observations it may be.

To the extent that Mr. Jones's testimony is understood to mean that Mr. Mathews cannot understand even simple verbal instructions, moreover, Dr. Powell's opinion squarely contradicts it. As noted in the previous paragraph, Dr. Powell concluded that Mr. Mathews suffers no difficulties in following short and simple instructions. This contradiction does not rest on an interpretation of Dr. Powell's opinion as to which reasonable jurists might differ, but is a necessary conclusion from his express findings. Accordingly, no reasonable ALJ would favor Mr. Jones's opinion that Mr. Mathews's mental limitations make him incapable of working over Dr. Powell's objective findings that Mr. Mathews can perform tasks that may be simply and concisely explained.

## CONCLUSION

Because I find that the ALJ's error in rejecting Mr. Jones's lay witness statements was harmless, the final decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

DATED this   28th   day of January, 2014.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge